IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EARL DORSEY, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-509 |
| | ) | Judge Terrence F. McVerry/ |
| HARRY E. WILSON; THE DISTRICT | ) | Magistrate Judge Amy Reynolds Hay |
| ATTORNEY OF THE COUNTY OF | ) | |
| ALLEGHENY; THE ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents | ) | |

## REPORT AND RECOMMENDATION

## RECOMMENDATION

It is recommended that the Habeas Corpus Petition be dismissed. It is further recommended that a Certificate of Appealability be denied.

## REPORT

James Earl Dorsey ("Petitioner"), a state prisoner, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging, inter alia, a sentence of life imprisonment for a first degree murder conviction. Because he has procedurally defaulted most of his claims, he is not entitled to relief on those claims. His claims relating to alleged errors in the PCRA proceedings are not cognizable and so do not provide a basis for relief. As to the other remaining claims, Petitioner has failed to show the that state courts' disposition of the remaining claims was contrary to or an unreasonable application of then extant Supreme Court law. Hence, the petition should be denied.

***Relevant Facts and Procedural History***

Petitioner's convictions on the various crimes charged establish the following. It appears that Petitioner was convicted of first degree murder as a conspirator[1] along with Petitioner's co-defendant, Lawrence Fisher, who was the shooter of the victim, and who was also convicted of first degree murder. On January 29, 1995, there were two encounters with Petitioner and the victims. During the initial encounter, the homicide victim, Dwayne Hudgins, was accompanying friends on the way to a Super Bowl party. While on the way, they were approached by a car driven by Petitioner, who was known and referred to as "Dewey." Fisher was also in the car. Three days prior, Fisher had personally threatened to kill one of the friends who was accompanying Dwayne Hudgins. On January 29, 2005, upon seeing the car driven by Dorsey, the friend whom Fisher had threatened to kill ran up to the car and pointed a gun at Dorsey and Fisher. Petitioner and Fisher sped away.

Dwayne Hudgins then got into a car with his friends and they drove away. Very shortly after the initial encounter had ended, the victims encountered Petitioner's car again and tried to avoid it by turning down a street, but Petitioner and Fisher followed after them, giving chase in the car. Fisher leaned out the passenger side window of the car driven by Petitioner and fired multiple shots from a gun, striking Hudgins in the head.

After police arrived, one of Hudgins's friends who was in the car accompanying Hudgins, approached an officer and recounted the events. Another of Hudgins's accompanying friends eventually cooperated with police and also confirmed the events. The eyewitnesses identified

---

[1] Trial Court slip opinion post trial, Dkt. [9-3] at 42 ("Since there was a conspiracy, Dorsey could be held liable for the acts of his co-conspirator done in furtherance of the conspiracy. Accordingly, it did not matter that Dorsey did not fire the weapon. His participation in the conspiracy made him liable for the actions of his co-conspirator.").

Fisher as the one leaning out of the window shooting at them, but they did not see the driver and so could not positively identify Petitioner as the driver. However, the witnesses assumed it was the Petitioner who was driving the car since only moments before, at the initial encounter, they saw Petitioner driving the car.

While Petitioner was in jail, a Carl Sullivan was also in jail and he testified at Petitioner's trial that Petitioner told Sullivan at the jail that "Mr. Artis [i.e., one of Hudgins' accompanying friends] pulled a gun on them [i.e., Petitioner and Fisher] and he [i.e., Petitioner] chased them [i.e., Hudgins and his friends in the car] and chased the car and did some shooting." Dkt. [9] at 12 (quoting Trial Transcript at 227).

At trial, Petitioner was represented by Sumner Parker of the Public Defender's Office. Petitioner was convicted at trial. Via another counsel, also from the Public Defender's office, Petitioner filed a direct appeal to the Superior Court. In the appeal, the only issues raised were:

> I. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO IMPEACH A COMMONWEALTH WITNESS [i.e., Carl Sullivan] ON HIS EXISTING PROBATIONARY STATUS?? [sic]
>
> II. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO INVESTIGATE AND PRESENT A CHARACTER WITNESS WHEN THAT WITNESS EXISTED AND WAS WILLING TO TESTIFY?

Dkt. [9-4] at 8. The Superior Court affirmed the conviction and sentence in an unpublished opinion. Dkt. [9-5] at 28 to 37. Still represented by the Public Defender's office, Petitioner filed a Petition for Allowance of Appeal ("PAA", formerly known as an "allocatur" petition). The sole issue raised in that PAA was:

> WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO IMPEACH A COMMONWEALTH WITNESS WITH HIS EXISTING PROBATIONARY STATUS?

Dkt. [9-6] at 6.   The Pennsylvania Supreme Court denied the PAA.

Petitioner then filed a pro se PCRA petition, Dkt. [9-6] at 28 to 33, and brief in support,

Dkt. [9-7] at 1 to 50.   The PCRA Court appointed counsel and an amended petition was filed in

which the following claims were raised:

> I. APPELLATE COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR
> FAILING TO RAISE THE CLAIM TO THE SUPERIOR [sic[2]] COURT THAT
> TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO
> PRESENT CHARACTER TESTIMONY.
>     . . . .
> II.  TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO
> SUPPRESS THE HOLSTER AND AMMUNITION; TRIAL COUNSEL
> FAILED TO OBJECT TO ADMISSION OF THE HOLSTER AND
> AMMUNITION WHEN THE PREJUDICIAL VALUE OUTWEIGHED ANY
> PROBATIVE VALUE.
>     . . . .
> III.  TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING
> TO INFORM THE CLIENT AND MOTION TO WITHDRAW FROM THE
> CASE WHEN THERE WAS A CONFLICT OF INTEREST WHEN TRIAL

---

[2] Appellate Counsel did in fact raise in the brief to the Superior Court, the issue of trial counsel's
failure to introduce character evidence.  Dkt. [9-4] at 8.  Hence, the way that the question is framed in the
counseled amended PCRA petition, which we have just quoted, is a typographical error.  When one reads
the argument in the body of the counseled amended PCRA petition, it is apparent that the issue being
raised is that Appellate counsel was ineffective for failing to raise in the PAA to the Pennsylvania
**Supreme** Court, the issue of trial counsel's failure to introduce character evidence.  The body of the
counseled amended PCRA petition contained the following argument:

> The fact is that Mr. Dorsey's petition for allowance of appeal was pending at the same
> time that the petition for allowance of appeal in *Morgan*[, 559 Pa. 248, 739 A.2d 1033
> (1999)] had been granted.  Indeed, Mr. Dorsey's petition for allowance of appeal was
> filed on May 18, 1998, which was the same date that the Supreme Court granted the
> petition for allowance of appeal in *Morgan*. . . . .
>         Appellate counsel gave ineffective assistance for failing to raise the issue,
> concerning trial counsel's failure to present character evidence, to the Supreme Court of
> Pennsylvania.  The claim had arguable merit, counsel had no reasonable basis for failing
> to raise the issue, Mr. Dorsey was prejudiced and the Supreme Court would have
> probably granted the petition.

Dkt. [10-2] at 7 to 8.

COUNSEL HAD REPRESENTED SULLIVAN AS TO HIS PRIOR
CONVICTION.
. . . .
IV.  TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR
IMPROPERLY ADVISING PETITIONER THAT HAD HE TESTIFIED HE
COULD BE IMPEACHED WITH PRIOR ARRESTS OF ASSAULTIVE
BEHAVIOR; COUNSEL ALSO FAILED TO EXPLAIN TO PETITIONER
THAT UNDER PENNSYLVANIA LAW PETITIONER'S TESTIMONY
ALONE CONSTITUTED AN ALIBI DEFENSE.
. . . .
V.  TRIAL COUNSEL GAVE INEFFECTIVE ASSISTANCE FOR FAILING TO
REQUEST A KLOIBER INSTRUCTION.
. . . .
VI.  SULLIVAN HAS RECANTED HIS TESTIMONY AND WILL TESTIFY
THAT HE GAVE PERJURED TESTIMONY; DUE PROCESS WAS
VIOLATED.

Dkt. [10-2] at 6 to 21.  The PCRA court eventually conducted a hearing, but limited the hearing

to only three issues.  At the hearing, Petitioner testified, as did his trial counsel, but Carl Sullivan,

the allegedly recanting jailhouse informant, was not presented by Petitioner to testify.  The

PCRA court dismissed the amended PCRA petition.  Dkt. [10-4] at 26.   After Petitioner's

counsel filed a Concise Statement of Matters complained of on appeal, Dkt. [10-4] at 32 to 34,

the PCRA court issued an opinion in support of its dismissal of the amended PCRA petition.

Dkt. [10-4] at 36 to 42.  Thereafter, Petitioner's counsel filed an appeal, in which the following

issues were raised:

> 1. Whether the PCRA court erred in failing to grant a new trial when it was shown
> that trial counsel gave ineffective assistance for failing to request a *Kloiber*
> instruction?
> . . . .
> 2.  Whether the PCRA Court erred in failing to grant a hearing when trial counsel
> failed to inform the client and motion to withdraw from the case when there was a
> conflict of interest?
> . . . .

3.  Whether the PCRA court erred in failing to grant a hearing when trial counsel failed to exclude the holster and ammunition from evidence when the prejudicial impact outweighed the probative value?

. . . .

4.  Whether the PCRA Court erred in failing to grant a new trial when it was shown that trial counsel gave ineffective assistance for giving improper legal advice, which resulted in Appellant waiving his right to testify?

Dkt. [10-5] at 9.   The Superior Court affirmed the denial of PCRA relief in an unpublished opinion.  Dkt. [10-7] at 1 to 12.  After a petition for reargument was denied, Petitioner, through counsel, then filed a PAA, in which the following issues were raised:

1.  Whether the PCRA Court erred in failing to grant a new trial when it was shown that trial counsel gave ineffective assistance for failing to request a *Kloiber* instruction?

2.  Whether the PCRA Court erred in failing to grant a hearing when trial counsel failed to inform the client and motion to withdraw from the case when there was an actual conflict of interest?

3.  Whether the PCRA Court erred in failing to grant a hearing when trial counsel failed to exclude the holster and ammunition from evidence when the prejudicial impact outweighed the probative value?

4.  Whether the PCRA Court erred in failing to grant a new trial when it was shown that trial counsel gave ineffective assistance for giving improper legal advice which resulted in Appellant waiving his right to testify?

Dkt. [10-8] at 13.   The Pennsylvania Supreme Court denied the PAA.  Dkt. [10-9] at 1.

Petitioner then filed, pro se, the instant habeas petition pursuant to 28 U.S.C. § 2254 in which he raises the following issues[3]:

[1.]  Trial counsel was ineffective for failing to investigate, interview, prepare, and subpoena, or otherwise compel the attendance and testimony of a known alibi [witness] who[se] testimony was exculpatory in nature.

[2.]  Trial counsel was ineffective for failing to seek the suppression of testimony of a jailhouse informant who was acting as an agent of the state thus denying petitioner due process as it pertains to right to assistance of counsel.

---

[3] In their answer, Dkt. [9] at 14, where they recount the issues raised by Petitioner, the Respondents omit Issues Number 15 and 16 as numbered by the Court herein.

[3.]  Trial counsel was ineffective for failing to seek [a] motion to suppress items seized from petitioner's residence pursuant to a warrantless search.

[4.]  Trial counsel was ineffective for failing to investigate, prepare, subpoena or otherwise compel the attendance of known character witnesses, witnesses who[se] testimony was exculpatory in nature.

[5.]  The Commonwealth committed prosecutorial misconduct when it knowingly allowed its witness to falsely testify that no deals were made in exchange for his testimony.

[6].  Trial counsel was ineffective for failing to raise the violation of appellant's rights to a speedy trial.

[7.] Trial counsel was ineffective for failing to seek the suppression of and/or object to the introduction at trial of a holster and ammunition where said items were unrelated to the case at bar.

[8.]  Trial counsel was ineffective for failing to withdraw due to a conflict of interest involving a key witness [i.e., Carl Sullivan] for the Commonwealth.

[9.]  Trial counsel was ineffective for erroneously advising petitioner as to the law, when he informed him that his arrest would be used against [him] if he testified.

[10.]  Appell[ate] counsel was ineffective for failing to raise all issues contained in this instant P.C.R.A. [sic] when said errors were clear from the record evidence and transcripts.

        . . . .

[11.]  Appellate counsel gave ineffective assistance for failing to raise the claim to the Superior [sic, should be "Supreme"] Court that trial counsel gave ineffective assistance for failing to present character testimony.

[12.]  Commonwealth failed to prove that petitioner possessed the specific intent to kill.

[13.]  Commonwealth failed to demonstrate that petitioner conspired to commit a crime.

[14.]  Trial Counsel gave ineffective assistance for improperly advising petitioner that had he testified he could be impeached with prior arrests of assaultive behavior, counsel also failed to explain to petitioner that under Pennsylvania law petitioner's testimony alone constituted an alibi defense.

[15.]  Trial counsel gave ineffective assistance of counsel for failing to request a *Kloiber* instruction.

[16.]  Sullivan [i.e., the jailhouse informant] has recanted his testimony and will testify that he gave perjured testimony; due process was violated.

[17.]  Trial counsel gave ineffective assistance for failing to argue that petitioner's Fifth and Sixth Amendments [sic] were violated when the Commonwealth interrogated petitioner through an agent [i.e., Sullivan] at the County Jail.

[18.]  Whether the PCRA Court erred in failing to grant a new trial when it was shown that trial counsel gave ineffective assistance for failing to request a *Kloiber* instruction?

[19.] Whether the PCRA Court erred in failing to grant a new trial when it was shown that trial counsel gave ineffective assistance for giving improper legal advice which resulted in Appellant waiving his right to testify?

[20.] Whether the PCRA Court erred in failing to grant relief when appellate counsel gave ineffective assistance for failing to raise a claim in a petition for allowance of appeal to the Supreme Court that trial counsel gave ineffective [assistance] for failing to present character witnesses?

[21.] Whether the PCRA Court erred in failing to grant a hearing when trial counsel failed to suppress the holster and ammunition when the prejudicial impact outweighed the probative value?

[22.] Whether the PCRA court erred in failing to grant a hearing when trial counsel failed to inform the client and motion to withdraw from the case when there was a conflict of interest [by Petitioner's trial counsel]?

[23.] PCRA counsel was ineffective for failing to call the recanting witness [i.e., Sullivan] to testify at the evidentiary hearing.

[24.] PCRA counsel was ineffective for failing to argue the conflict of interest between trial counsel and appellant [sic] counsel[,] both from the same public defenders office.

[25.] Commonwealth committed an inordinate delay when it took three years from the time that the evidentiary hearing was granted and [then finally] held.

[26.] The Commonwealth lacked sufficient evidence to sustain a conviction of first degree murder.

[27.] PCRA counsel was ineffective for failing to raise the claim that trial counsel was ineffective for failing to present a defense at trial.

Dkt. [4] at 2, 6, & 9. The Respondents filed an answer, accompanied by copies of the pertinent state court records. Dkt. Nos. [9] - [10]. The Respondents also forwarded to this Court the original state court records. Petitioner filed a traverse. Dkt. [11].

Petitioner also filed a motion requesting that this Court stay and abey the case. Dkt. [12]. The Court denied the motion. Dkt. [13].[4]

---

[4] In his motion to stay and abey the case, Petitioner merely represented that on August 1, 2007, Petitioner learned that his trial counsel had "represented another client during the time that petitioner's trial was held. Petitioner's trial began on 2-27-96, and ended on 3-4-96.... On 2-29-96[,] petitioner's trial counsel represented RALPH BOLDEN, in another matter which was a first degree murder trial, Which [sic] violated Petitioner's Sixth Amendment Right to Conflict free Counsel; as well as Counsel's Undivided Loyalty." Dkt. [12] at 1 to 2, ¶¶ 1 to 2. Petitioner's motion suffered several problems. First, he did not specify why he wanted the habeas petition stayed. He did not allege that he was going to file anything in state court. Indeed, the Court takes judicial notice of the criminal dockets of the Allegheny

*Discussion*

1. <u>Procedural default</u>

The doctrine of procedural default essentially provides that if a federal habeas petitioner

has either failed to present a federal claim in the state courts or failed to comply with a state

procedural rule and such failure to present or to comply would provide a basis for the state courts

to decline to address the federal claim on the merits, then such federal claims may not be

addressed by the federal habeas court. <u>See</u>, <u>e.g.</u>, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)

(failure to object at trial constituted waiver of issue under state law and hence, a procedural

_____

County Court of Common Pleas and finds that Petitioner has not filed any motion in that Court to bring before it this newly discovered claim, as is required by state law. 42 Pa.C.S.A. 9545(b)(2); <u>Commonwealth v. Gamboa-Taylor</u>, 753 A.2d 780, 783 (Pa. 2000)(construing Section 9545(b)(2) and stating that "a petitioner relying on the after-discovered evidence exception is further required to file his or her PCRA petition within 60 days of the discovery of the new evidence proffered in support of relief."). The dockets are available at:

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=79937055&arch=0&ST=5/27/2008%2010:04:28%20AM

and at

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=79936055&arch=0&ST=5/27/2008%2010:22:16%20AM

Given that Petitioner failed to file any new PCRA petition within sixty days after August 1, 2007, as required by state law, he has procedurally defaulted this claim. <u>Slutzker v. Johnson</u>, 393 F.3d 373, 381 (3d Cir. 2004); <u>Kubis v. Kyler</u>, No. Civ.A. 03-1580, 2003 WL 23206073, at *3 (E.D. Pa. July 22, 2003)(finding a procedural default based on 42 Pa.C.S. § 9545(b)(2)); <u>Abu-Jamal v. Horn</u>, No. 99-5089, 2001 WL 827468, at *5 (E.D. Pa. July 20, 2001). Even if not procedurally defaulted, the claim is meritless as Petitioner does not claim an actual conflict of interest between himself and the defendant Ralph Bolden, who was a defendant in a case wholly unrelated to Petitioner's case. Rather, Petitioner merely appears to be claiming that simultaneous representation of two clients for first degree murder constitutes, per se, a violation of his right to effective counsel. This is not the rule. The rule is that for concurrent representation to constitute a constitutional wrong, there must be an actual conflict of interest and proving an actual conflict of interest requires a showing of adverse effect on counsel's performance, something that Petitioner fails to show instantly. <u>See</u> <u>Mickens v. Taylor</u>, 535 U.S. 162, 172 n.5 ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.").

9

default under federal habeas law); <u>Francis v. Henderson</u>, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas).

There are two exceptions to the procedural default doctrine. First, an issue that was not properly raised in the state courts and therefore procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for and actual prejudice stemming from the procedural default. <u>Wainwright v. Sykes</u>. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" <u>Werts v. Vaughn</u>, 228 F.3d 178, 193 (3d Cir. 2000) (citations and some internal quotations omitted). A second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice," which will be explained below.

Pennsylvania applies a rule of waiver in multiple contexts. An issue not raised at trial or on direct appeal is waived. <u>Commonwealth v. Agie</u>, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.")(citations omitted); <u>Commonwealth v. Steffish</u>, 365 A.2d 865 (Pa. Super. 1976); <u>Commonwealth v. Perea</u>, 381 A.2d 494, 496 (Pa. Super. 1977)("The reason

our review is confined to the one issue is because the other issues were not raised in the trial below or in post-verdict motions. The appellate courts of Pennsylvania have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal."); Commonwealth v. Mitchell, 445 A.2d 721, 723 (Pa. 1982)(issues not raised on direct appeal are waived).

Petitioner never presented the following issues either in his direct appeal to the Superior Court or in his PCRA appeal to the Superior Court: Issues Number 1, 2, 3, 5, 6, 10, 12, 13, 16 and 17 are all procedurally defaulted based on Petitioner's failure to raise these issues on appeal to the Superior Court on either the direct appeal or on the PCRA appeal.   Accordingly, they are procedurally defaulted.

Petitioner does not argue cause and prejudice for his procedural default but he does argue the miscarriage of justice exception to the procedural default.  Dkt. [11-2] at 21.  However, Petitioner misquotes what this standard means.  Petitioner contends that a miscarriage of justice is established where "AN ERROR AT TRIAL . . . PROBABLY LED TO A LESS FAVORABLE OUTCOME FOR THE APPEALING PARTY."  Dkt. [11-2] at 21.

The phrase "miscarriage of justice" has been explained by the Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995); United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'").  Moreover, "actually innocent" means factual innocence and not just legal innocence.  See Calderon v. Thompson, 523 U.S. 538, 559

(1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of "actual innocence" a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. Schlup, 513 U.S. at 327-28. Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' Id. at 327." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001). See also Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)(implicitly requiring that in order to constitute "new evidence," the evidence must not merely be evidence that was not presented at the time of trial but the evidence must have not been available at time of trial, noting that "[a] defendant's own late-proffered testimony is not 'new' because it was available at trial. Hubbard merely chose not to present it to the jury. That choice does not open the gateway."). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by Sawyer and Carrier does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.[5]

---

[5] There does appear to be one narrow exception to the requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." See, e.g., United States v. Garth, 188 F.3d 99 (3rd Cir. 1999). However, for reasons explained in Sweger v. Chesney, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and Gale v. Rozum, NO. 06-CV-1266, 2006 WL 2092572 (M.D. Pa. July 25, 2006), the narrow Garth exception does not apply here. Whereas in Garth, a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

The first prong of the two part test, i.e., whether the proffered evidence is new, requires that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d at 1028. Petitioner's claim of actual innocence flounders on this ground.

Petitioner points to no "new reliable evidence" of actual innocence. The only "new" evidence Petitioner pointed to was the fact that in August 2007, he learned that his counsel had another client at the time of Petitioner's trial, who was charged with first degree murder and that this simultaneous representation of two first degree murder defendants violated Petitioner's rights. As explained earlier in the footnote addressing Petitioner's stay and abey request, this issue was itself procedurally defaulted. Morever, this evidence of simultaneous representation of two first degree murder defendants does not constitute "**new** evidence" given that such information was extant at the time of Petitioner's trial and no doubt could have been ascertained with reasonable diligence. Alternatively, even if it were assumed to constitute "new evidence," such evidence of Petitioner's trial attorney having two clients simply does not establish Petitioner's actual innocence of the crimes. In fact, it has absolutely no bearing on whether Petitioner committed the crimes or not. Hence, it simply does not constitute "new reliable evidence of **actual innocence**."

The only other piece of "new" evidence is the alleged recantation of witness Sullivan. The state courts never addressed this issue because, although Petitioner raised the issue in the amended PCRA petition and the PCRA court granted a hearing as to this issue, see state court Record, PCRA transcript, dated July 1, 2004, at p. 4, lines 9 - 17, Mr. Sullivan was never offered at the PCRA hearing to testify that he recanted, nor did Petitioner raise this issue in the appeal to

the Superior Court from the denial of PCRA relief.  We find, on this record where the "new evidence" of his so called actual innocence was available to Petitioner to present to the state courts but he failed to do so, Petitioner has procedurally defaulted his claim of actual innocence. See, e.g., Dejan v. United States, 208 F.3d 682, 687 (8th Cir. 2000)("We therefore find that Dejan's actual innocence claim on the dismissed drug count has itself been procedurally defaulted . . . .");  Smith v. Holt, NO. CIV.A. 3:05CV470, 2008 WL 1929905, *22 (M.D.Ala. April 29, 2008)("Although an actual innocence claim 'can itself be defaulted .. ..'").  Cf. Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").  If a claim of cause to excuse procedural default can itself be procedurally defaulted, we fail to see why a claim of actual innocence offered to excuse a procedural default cannot also itself be procedurally defaulted, at least in the situation where both the claimed new evidence was available to a petitioner as was a state procedural means by which to bring the claim of new evidence to the state courts, which was the case herein.

In the alternative, we do not find the 1999 affidavit of Sullivan reliable evidence of Petitioner's actual innocence.  The purported recantation evidence merely supports the fact that Petitioner did not **admit** to his presence in the car from which the shots were fired, it does nothing to disestablish the other evidence of Petitioner's guilt.  Specifically, the eyewitnesses testified that it was Petitioner whom they saw shortly before the chase, in the very car which evidence established was owned by Petitioner, which was the same car used in the chase.  Those witnesses also testified to seeing that Petitioner was accompanied by Mr. Fisher in that car shortly before the chase ensued.  Those same eyewitnesses testified that Mr. Fisher was the one

leaning out of that car on the passenger side, shooting at them as they were being chased by Petitioner's car. Considering all this evidence, Petitioner has failed to convince the Court that it is more likely than not that no reasonable juror would have found the Petitioner guilty in light of the new evidence of the recantation of Sullivan. Accordingly, Petitioner has failed to establish a miscarriage of justice so as to excuse his procedural defaults.

Having failed to carry his burden to show a miscarriage of justice, Petitioner has not shown that despite his procedural default of his claims, this court should entertain them on the merits. Thus, Petitioner has failed to establish his entitlement to pass through the gateway of Schlup.

2. Errors in the PCRA proceedings are not cognizable

In his habeas petition, Petitioner raises a number of claims of alleged errors arising during the course of the PCRA proceedings. Petitioner did so in the following claims numbered: 18, 19, 20, 21, 22, 23, 24, 25 and 27. The rule is, errors in the course of a state's post conviction process simply are not cognizable in a federal habeas petition. The Court of Appeals for the Third Circuit has explained in Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) that "[t]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"). Accord Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995) ("An attack on a state habeas proceeding does not entitle the petitioner to

habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the

detention and not the detention itself.") (internal quotation marks omitted); Roe v. Baker, 316

F.3d 557, 571 (6th Cir. 2002) ("relief may not be granted to a habeas petitioner for alleged

deficiencies in a state's post-conviction procedure"); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.

1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989); Hopkinson v. Shillinger, 866 F.2d

1185, 1219-20 (10th Cir. 1989), on reh'g, 888 F.2d 1286 (1989), overruling on other grounds

recognized by Davis v. Maynard, 911 F.2d 415, 417 (10th Cir. 1990); Spradley v. Dugger, 825

F.2d 1566, 1568 (11th Cir. 1987). Contra Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984).

Accordingly, none of the foregoing issues, i.e., Issues Number 18, 19, 20, 21, 22, 23, 24, 25 or 27

provides a basis for the grant of habeas relief.[6]

> 3.    The remaining issues do not merit relief because the state courts acted
>        reasonably

---

[6] Issues Number 23, 24 and 27 fail for an additional reason. All three issues claim
ineffectiveness of PCRA counsel. It does not matter for the purposes of deciding these three issues
whether PCRA counsel was ineffective, although it is doubtful that he was. This is so because, even if
we assumed PCRA counsel was ineffective, the ineffectiveness of PCRA counsel simply does not
provide a ground for relief in federal habeas proceedings, as such ineffectiveness implicates no federal
constitutional right given that Petitioner had no federal constitutional right to counsel at that stage in the
proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an
attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally
ineffective assistance of counsel in such proceedings.")(citations omitted). There is no substantive due
process or equal protection right to counsel in state post conviction proceedings. Jacobs v. McDaniel,
139 F.3d 905 (Table); 1998 WL 78440, at *1 (9th Cir. 1998)("Jacobs' claim that he was denied due
process because the state habeas court refused to appoint counsel at the evidentiary hearing fails for lack
of a right to counsel in state collateral proceedings."); Gibson v. Public Advocacy Dept., 35 F.3d 565
(Table), 1994 WL 462160 at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the
Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts requires
the defendants to appoint counsel for Gibson [in state post conviction proceedings]. See Murray v.
Giarratano, 492 U.S. 1, 7 (1989). Thus, it is beyond a doubt that Gibson has no federal constitutional
right to counsel . . . ."); Pursell v. Horn, 187 F.Supp.2d 260, 373 (W.D. Pa. 2002)(holding in a death
penalty case that "the due process clause does not require counsel for state post-conviction proceedings,
whether state law requires such counsel or not."). Accordingly, these three issues do not merit relief for
this additional independent ground.

In light of the foregoing, the only remaining issues are Issues Number 4, 7, 8, 9, 11, 14, 15, 16, and 26.

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e). The standards of review under AEDPA essentially require a habeas Petitioner to show that the state courts' adjudication of his federal claims constituted a decision that was contrary to or an unreasonable application of United States Supreme Court precedent extant at the time of those state court decisions. See, e.g., Williams v. Taylor, 529 U.S. 362 (2000)(explaining the phrases "contrary to" and "unreasonable application of").[7]

Taking up Issue Number 4, Petitioner claims that his trial counsel was ineffective for failing to investigate, prepare, subpoena or otherwise compel the attendance of known character witnesses. Dkt. [4] at 2. The State courts addressed this issue. Specifically, the Superior Court held that Petitioner failed to carry his burden under the test for ineffectiveness to show that the failure of the trial counsel to introduce the character testimony of the only witness proffered in

---

[7] AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2). It does not appear that Petitioner properly casts his arguments in terms of an unreasonable determination of the facts. However, to the extent that he may have attempted to do so, the Court concludes that none of the factual determinations of the state courts is unreasonable.

the state courts, i.e., Petitioner's uncle,[8] prejudiced Petitioner in view of the substantial evidence

of his guilt. Dkt. [9-5] at 35 to 37. Petitioner has not carried his burden in this Court to show

that the Superior Court's disposition of this claim of trial counsel's ineffectiveness was contrary

to or an unreasonable application of then extant United States Supreme Court precedent.

Accordingly, this issue does not afford Petitioner relief.

In the alternative, this issue was waived for failing to raise it in the PAA filed in the

Pennsylvania Supreme Court from the Superior Court's decision on the direct appeal. Such a

failure by Petitioner constitutes a waiver under the law of Pennsylvania. See Commonwealth v.

Stanley, 446 A.2d 583, 585 n.1 (Pa. 1982)("These claims were not raised in appellant's petition

for allowance of appeal, hence waived [sic]. Pa.R.A.P. 1115(a)(3); Commonwealth v. Drake,

489 Pa. 541, 414 A.2d 1023 (1980); Abramson v. Commonwealth, Public Utility Commission,

489 Pa. 267, 270 n.5, 414 A.2d 60, 62 n.5 (1980)."). Accordingly, such waiver under state law

constitutes a procedural default for federal habeas purposes. Beaty v. Patton, 700 F.2d 110,

111-12 (3d Cir.1983) ("Beaty's failure to file a petition for allocatur in the Pennsylvania Supreme

Court constitutes a procedural default that deprived the highest state court of an opportunity to

consider his constitutional claims."); Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001)(where

federal habeas petitioner had failed to file an allocatur petition, the Court of Appeals found such

to constitute a procedural default for habeas purposes, noting that "[o]ur court has previously

held that a petition for allowance of appeal is an available remedy in Pennsylvania, and we have

---

[8] To the extent that Petitioner tries to contend herein that he had witnesses other than his uncle willing to testify to his good character, see Dkt. [11] at 31 to 38, the Court notes Petitioner never presented these witnesses and the related claims of ineffectiveness for failing to call them to the state courts and hence, the claims that counsel was ineffective for failing to call them are procedurally defaulted.

held that claims were not exhausted or were procedurally defaulted because such review was not sought.")(citations omitted); <u>Mattis v. Vaughn</u>, 128 F.Supp.2d 249, 263 (E.D. Pa. 2001) ("because petitions for allowance of appeal to the Pennsylvania Supreme Court must be filed within thirty days after the entry of a final order of the Superior Court, Mattis's <u>Brady</u> claim would now be procedurally barred.  <u>See</u>  Pa. R.A.P. 1113.  We therefore conclude and hold that Mattis's <u>Brady</u> claim is procedurally defaulted."), <u>aff'd</u>, 80 Fed.Appx. 154 (3d Cir. 2003); <u>Smith v. Vaughn</u>, No. Civ. A. 96-8482, 1997 WL 338851, at *4 (E.D. Pa. June 17, 1997)(failure to petition for allocatur is a procedural default).  <u>See</u> <u>also</u> <u>Boerckel v. Sullivan</u>, 526 U.S. 838, 848-49 (1999) ("Our disagreement with Justice Stevens in this case turns on our differing answers to this last question:  Whether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has properly presented his claims to the state courts.  Because we answer this question 'no,' we conclude that Boerckel has procedurally

defaulted his claims.").[9]  Because Petitioner procedurally defaulted claim Number 4, and he has

not shown a miscarriage of justice, Claim Number 4 cannot  provide a basis for relief.

Claim Number 11 is related to Claim Number 4.   Claim Number 11 is whether Appellate

Counsel gave ineffective assistance for failing to raise in the PAA the claim to the Pennsylvania

---

[9]  It was not until May 9, 2000, that the Pennsylvania Supreme Court promulgated a rule entitled "In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases" No.  218 Judicial Administration Docket No. 1 which provided that

> AND NOW, this 9th day of May, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals.  Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor.  Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.
> In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error.  When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief.
> This Order shall be effective immediately.

In re:  Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam ).  This order has been published at 561 Pa. CXXXVIII.  See also William P. Murphy, State High Court Signals Sea Change in Federal Habeas, PENNA. LAW WEEKLY, May 29, 2000, at 12.
    Whatever the significance of this order for purposes of a federal court's habeas corpus analysis, and its impact on procedural default, if any, it is clear that the rule does not apply to cases, such as this one, wherein the time for filing a petition for allowance of appeal expired prior to May 9, 2000, the effective date of the rule.  Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001) ("we hold that Order 218 does not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the order.").
    Hence, at the time Petitioner filed his PAA from the Superior Court's affirmance of his conviction, circa April - May 1998, the Pennsylvania rule that an issue not raised in such a petition is waived, was regularly and consistently applied, thus permitting a federal habeas court to conclude that failure to comply with the rule constituted a procedural default.

Supreme Court that trial counsel was ineffective for failing to introduce character evidence. See Dkt. [4] at 2 and 6.

A claim of ineffectiveness of counsel is cognizable only if there is a federal right to counsel at the stage when counsel is alleged to have been ineffective. See Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted); Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993)("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel"). The underlying assumption of Petitioner's argument is that he has a federal right to counsel at the stage of discretionary appeal to the Pennsylvania State Supreme Court. He does not. Here, at the point where counsel was alleged to have been ineffective, i.e., during the discretionary appeal to the Pennsylvania Supreme Court, Petitioner did not have a federal right to counsel. The rule is there is no federal constitutional right to counsel once the first appeal as of right has been decided. Wainright v. Torna, 455 U.S. 586, 587-88 (1982)(no ineffective assistance of counsel for failing to file a timely petition for discretionary appeal even on direct as opposed to collateral review, because there is no federal constitutional right to counsel at that stage); Hernandez v. Terhune, 27 Fed.Appx. 841 (9th Cir. 2001)(same); Harris v. Steagall, 157 F.Supp.2d 743, 750 (E.D. Mich. 2001)("Because petitioner had no constitutional right to the effective assistance of counsel in filing his application for leave to appeal with the Michigan Supreme Court . . . ."). Because Petitioner has no federal right to counsel during the PAA

proceedings, even if counsel were ineffective at that time, such fails to provide any basis for habeas relief.

Next, we consider Claim Number 7, i.e., trial counsel's alleged ineffectiveness for failing to seek the suppression of and/or object to the admission of a holster and ammunition that were found at Petitioner's apartment. In the PCRA proceedings, both the Superior Court and the PCRA Court addressed this issue on the merits. The Superior Court simply affirmed in the basis of the PCRA Court's opinion. Dkt. [10-7] at 10 ("The PCRA court has explained why the evidence in question was both relevant and probative and why it [i.e., the PCRA court] concluded that the evidence was not overly prejudicial to Appellant's interests. We agree with the PCRA court's analysis and resolution of this claim. We therefore affirm on that basis.").

The PCRA court reasoned that because the holster and ammunition were in plain view[10] when the police officer was permitted into Petitioner's apartment by Petitioner's Uncle, there was no Fourth Amendment violation and hence no constitutional ground to move for suppression. Hence, the PCRA court found that trial counsel could not have been ineffective for failing to seek to suppress this evidence on constitutional grounds. Dkt. [10-4] at 39 to 40.

---

[10] As succinctly explained by one court:

The plain view exception to the warrant requirement "authorizes seizure of illegal or evidentiary items visible to a police officer whose access has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." United States v. Jenkins, 876 F.2d 1085, 1088 (2d Cir.1989) (citations omitted). Warrantless seizure of an item is justified under the plain view exception where (1) the police have lawful access to the place from which the item can be plainly viewed; (2) the item seized is in fact in plain view at the time it is discovered; and (3) it is "immediately apparent" to the police at the time of discovery that the item constitutes evidence of, an instrumentality of or fruit of a crime.

United States v. Yu, 755 F.Supp. 578,581 (S.D.N.Y., 1991).

Petitioner has not carried his burden to show that this disposition was contrary to or an unreasonable application of Supreme Court precedent.

Petitioner argues that Detective Gary Talent did not have an arrest warrant at the time he attempted to execute it, i.e., on January 29th, 1995 at approximately 4:40 p.m., and when Officer Talent found the evidence in plain view. See Dkt. [11] at 46. However, the PCRA Court found as a fact that an arrest warrant had issued and thus, Detective Talent did have authority to execute such. Dkt. [10-4] at 39 ("he had an arrest warrant for the defendant."). The original state court record for Case No. 95-03678 (the aggravated assault and weapons charges) contains a warrant for Petitioner's arrest being issued on January 29, 1995. The warrant for Petitioner's arrest in Case No. 95-02674, on the homicide charge[11] did not issue until January 30, 1995. Hence, Detective Talent had the authority to execute the arrest warrant for Petitioner. In attempting to do so, he was permitted entrance into Petitioner's apartment and upon entrance there saw in plain view the evidence and properly seized it. The PCRA Court's determination that this factual scenario did not amount to a constitutional violation is neither contrary to nor an unreasonable application of Supreme Court precedent especially as it relates to seizure of items in plain view. See, e.g., United States v. Truitt, 521 F.2d 1174 (6th Cir. 1975) ("The inquiry … is not primarily whether the object is contraband, but whether its discovery under the circumstances would warrant a police officer of reasonable caution in believing that an offense has been or is being committed and that the object is evidence incriminating the accused."); United States v. Spencer, 522 F. Supp. 463 (E.D. N.Y. 1981) (incriminating nature of weapons seized pursuant to execution of arrest warrant was "readily apparent").

---

[11] The two sets of criminal charges were consolidated for trial.

The Supreme Court has limited warrantless seizures under the "plain view" doctrine to situations where the officer had a legal right to be at the location from which the object was plainly viewed. Horton v. California, 496 U.S. 128, 136 (1990). As the Court has explained "[w]hat the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification-whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present. . . ." Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971). The State Court's reasoning herein is in accord with Coolidge.

Petitioner does not point to any Supreme Court precedent that renders the state courts' determinations contrary to or unreasonable. He does cite to Abel v. United Sates, 362 U.S. 217 (1960) and Chapman v. United States, 365 U.S. 610 (1961). But neither of those cases dealt with the plain view doctrine, and neither is sufficiently factually analogous to the case at hand to be of any analytical assistance. Abel dealt with administrative warrants issuing as a ruse for criminal investigations, a factual scenario wholly unrelated to the facts at hand. In Chapman, there was no warrant, unlike here, which, for the plain view doctrine makes all the difference. Id., at 610 ("Acting **without a warrant** but with the consent of the petitioner's landlord, Georgia law enforcement officers entered-through an unlocked window-and searched petitioner's rented house, in his absence. . . .")(emphasis added). The arrest warrant authorized the officer to be in Petitioner's apartment in order to execute the arrest or to at least see if Petitioner were present in the apartment, given that there were sounds coming from the apartment, (which turned out to be coming from the television that apparently was left on). See, e.g., United States v. Spencer, 522

24

F. Supp. at 466 ("No argument can be made at this date that the police may not enter into a person's place of residence to execute an arrest warrant for that person. The Supreme Court has reiterated this rule just recently.")(citing Payton v. New York, 445 U.S. 573, 602-603 (1980)). Hence, because Talent was in Petitioner's apartment legally when he saw the items in plain view, the Constitution permitted him to seize them.

Because the state courts concluded that there was no merit to a suppression motion, and properly so, the state courts concluded that trial counsel was not ineffective for failing to seek suppression.  The state courts' disposition of the ineffectiveness claim is reasonable.

The second part of Petitioner's argument is that trial counsel should have objected to the admission of the evidence, not on constitutional grounds, but on evidentiary grounds that its relevance was outweighed by its prejudicial impact.  Again the state courts found the underlying claim, *i.e.*, that the probative value outweighed its prejudicial value, to be meritless and hence, counsel could not be ineffective for failing to raise such a meritless issue. Dkt. [10-4] at 40. This disposition is reasonable.   Hence, this argument does not warrant relief.

Next, we address Petitioner's Claim Number 8, wherein he contends that trial counsel was ineffective because he failed to withdraw due to an alleged conflict of interest based on the fact that counsel had represented Carl Sullivan in a criminal case wherein the representation had terminated some four years prior to Petitioner's trial.  The state courts addressed this issue on the merits, finding that there was no actual conflict of interest and hence, no need for Petitioner's trial counsel to withdraw and also finding no prejudice because counsel vigorously cross-examined Sullivan's motive to lie so as to curry favor with respect to his own criminal charges. Dkt. [10-4] at 41 ("the Court finds that there is no actual conflict of interest."); Dkt. [10-7] at 8 to

9. Petitioner has not carried his burden to demonstrate that the state courts' adjudication of this claim was contrary to or an unreasonable application of Supreme Court precedent and indeed it is not. See, e.g., Stewart v. Wolfenbarger, 468 F.3d 338, 350-51 (6th Cir. 2006) wherein the court held that

> In Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court found that the presumed prejudice standard of [Cuyler v.] Sullivan was clearly established only in the situation of a conflict of interest due to multiple concurrent representation. Id. at 175. The Supreme Court explicitly left open the question of whether the Sullivan standard applied to a conflict of interest due to successive representation. Id. at 176. This Court has consistently held that, for § 2254 cases, the Sullivan standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the Strickland standard applies. . . . Thus, the initial issue is whether the instant case involves a conflict of interest based on multiple concurrent representation or on some other ground. This case does not involve multiple concurrent representation. O'Connell represented Johnson when he was arrested and charged with first degree murder. The prosecution then dismissed the case against Johnson. Seven months later, Petitioner retained O'Connell as counsel in connection with the same crime. In our view, O'Connell's representation of Johnson ended well before her representation with Petitioner began. Therefore, this is not a case of multiple concurrent representation, so the Strickland standard applies.

The state courts' adjudication of the conflict-of-counsel claim was not contrary to or an unreasonable application of Supreme Court precedent.

Next is Petitioner's claim Number 9, wherein he contends his trial counsel was ineffective for erroneously advising him that if he took the stand, he could be impeached with his prior arrests. This claim is also repeated in Claim number 14. After conducting a hearing, the PCRA court found as a fact that Petitioner's trial counsel did not erroneously advise him, thus finding the factual premise of Petitioner's claim null and void. Dkt. [10-4] at 38; Dkt. [10-7] at 11. The state courts' factual finding, which was a credibility determination (i.e, the PCRA Court

found counsel's testimony as to what he advised Petitioner more credible than Petitioner's testimony as to what counsel allegedly advised him), is not unreasonable and so it follows as a matter of logic, the state courts' rejection of this claim is not contrary to or an unreasonable application of Supreme Court precedent for if the claimed deficient performance did not occur and we know that it did not, given the state courts' factual finding, then there can be no ineffectiveness. Accordingly, Claims Number 9 and 14 do not merit relief.

Claim Number 14 also included a subsidiary claim that trial counsel was ineffective for failing to advise Petitioner that his testimony alone could constitute evidence of an alibi. However, the Superior Court found that Petitioner's testimony that he was at another place did not render it impossible for him to have committed the crime and so his testimony would not have amounted to an alibi defense.  Dkt. [10-7] at 11 to 12.  See also id. at 12 ("Appellant's assertion [i.e., that he was at a friend's house in Braddock on the date of the murder], without more, does not demonstrate that it was impossible for Appellant to have been in Homestead at the relevant time."). This Court understands the Superior Court's reasoning to be that because Petitioner did not establish a viable alibi defense, Petitioner could not be prejudiced by any erroneous advice from trial counsel regarding a non-existent alibi defense.   Petitioner has failed to show that the Superior Court's disposition of this claim was contrary to or an unreasonable application of Supreme Court precedent.

Next we take up Petitioner's Claim Number 15, wherein Petitioner claims that his trial counsel was ineffective for failing to request a Kloiber instruction, which is a state law jury instruction concerning how a jury should deal with doubtful eyewitness identifications of accused criminals.   The state courts found that a Kloiber instruction should not have been requested

because none of the Commonwealth eyewitnesses to the crime was able to identify Petitioner as the driver of the car, nor did they "identify" him as the driver, all they testified to was that they assumed Petitioner to have been the driver at the time of the shooting because they had seen him during the initial encounter driving his car, shortly before the chase occurred and that they knew it was Petitioner's car which was chasing them shortly after the initial encounter.  Dkt. [10-4] at 37 to 38; id. at 38 ("Here, neither of the witnesses challenged by the defendant, Raheem Anderson and Marlin Epps, gave identification testimony.  Both said they could not identify the person driving the car at the time of the shooting as the defendant. . . . Because neither of these witnesses were identification witnesses in that they did not identify the defendant, a Kloiber instruction was not warranted.").   Dkt. [10-7] at 6 to 8.  It follows that if a Kloiber instruction was not required or appropriate under state law as explained by the state courts, then trial counsel's failure to request such a Kloiber instruction cannot be deemed deficient performance for an ineffective assistance of counsel claim, which is precisely what the state courts held.  This disposition of the ineffectiveness claim is neither contrary to nor an unreasonable application of then extant Supreme Court precedent.  Accordingly this issue does not merit relief.

Next we take up Claim Number 26, i.e., that there was insufficient evidence to sustain a conviction of first degree murder.   The state courts addressed this issue in the direct appeal stage.   The state trial court found that there was sufficient evidence to find that Petitioner was guilty of first degree murder as a conspirator with his co-defendant Fisher, who apparently did the actual shooting.  Dkt. [9-3] at 40 to 42.   Petitioner has not carried his burden to show that the state courts' disposition of this claim was contrary to or an unreasonable application of then extant Supreme Court precedent.

4.      Certificate of Appealability

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders

regarding habeas petitions.  Section 2253 essentially provides in relevant part that a certificate of

appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be

issued unless the petitioner "has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253 (C)(2).  Petitioner has not made such a showing because he has not

shown that reasonable jurists would disagree with either the substantive findings or the

procedural findings.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a

certificate of appealability should be denied.


In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule

72.1.4 B, the parties are permitted to file written objections by June 30, 2008 and any responses

to objections are due seven days after the filing of objections in accordance with the schedule

established in the docket entry reflecting the filing of this Report and Recommendation.  Failure

to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge


Dated:  10 June, 2008

cc:     The Honorable Terrence F. McVerry
        United States District Judge

        James Earl Dorsey
        CZ-6171

SCI - Fayette
P.O. Box 9999
LaBelle, PA 25450-0999

All counsel via CM-ECF